UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SHAWN JAMISON,

Plaintiff,

v.

LIFE INSURANCE COMAPNY OF NORTH AMERICA; JAGUAR LAND ROVER NORTH AMERICA, LLC,

Defendants.

Case No. 3:21-cv-00039-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

Currently before the court are plaintiff's motion for trial on the administrative record (ECF 22); defendant Life Insurance Company of North America ("LINA")'s motion to dismiss plaintiff's claims and defendant Jaguar Land Rover North America, LLC ("Jaguar")'s cross-claims (ECF 39); and Jaguar's cross-motion for summary judgment (ECF 41), which primarily asserts that this court lacks subject matter jurisdiction over the case because plaintiff's short-term disability claim is not governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

The undisputed evidence in the record demonstrates that the benefits under Jaguar's short-term disability plan are paid out of Jaguar's general assets as part of plaintiff's normal compensation. Therefore, the plan is subject to the "payroll practice" exemption under 29 C.F.R. § 2510.3-1 and is not governed by ERISA. Because an ERISA claim is the sole basis for subject matter jurisdiction alleged in the complaint, Jaguar's cross-motion for summary judgment (ECF 41) should be granted and plaintiff's complaint should be dismissed without prejudice. Neither Jaguar's cross-claims against LINA nor LINA's cross-claims against Jaguar have any independent basis for subject matter jurisdiction and the exercise of supplemental jurisdiction would be inappropriate here; therefore, they too should be dismissed without prejudice. All other outstanding motions should be denied as moot.

## I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citing Fed. Rule. Civ. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary

judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev*., 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134 (citation omitted).

## II. Background

Plaintiff began working at Jaguar in 2016. Schaffer Decl., Ex. D at 4, ECF 42-1. As part of its employee benefit package, Jaguar offered short-term disability benefits. Dillon Decl. ¶¶ 2-5, ECF 43. In May of 2019, plaintiff was approved for medical leave, and was subsequently awarded short-term disability benefits under Jaguar's plan. *Id.* ¶ 6; Schaffer Decl., Ex. D at 4, ECF 42-1. Benefits began on June 3, 2019, and were initially approved through July 26, 2019. Admin. Rec., ECF 25 at 438 (filed under seal).

At that time, Jaguar's short-term disability plan was administered by defendant LINA, a subsidiary of CIGNA Group Insurance Company. Dillon Decl. ¶ 5, ECF 43. Under the administrative services agreement governing the relationship between Jaguar and LINA, the short-term disability plan was self-funded by Jaguar; as the employer, Jaguar was responsible for paying "[a]ll Plan Benefits, expenses, and taxes[.]" Dillon Decl., Ex. A at 5, ECF 43-1. LINA in turn agreed to provide standard disability claim forms, and to "provide the initial and ongoing screening of claims to determine whether claims for Plan Benefits are payable." Dillon Decl., Ex.

A at 11, ECF 43-1. To that end, LINA would, where necessary, "seek and obtain information from medical providers and others necessary to determine qualification for Plan Benefits," and would "generally coordinate the claim denial and appeal process provided for in ERISA regulations." *Id.* at 11-12.

Jaguar offered two different short-term disability plans, depending on how employees were classified; it is not clear from the record how plaintiff was classified or which plan his benefits arose from. *See* Dillon Decl., Ex. B at 3, Ex. C at 3, ECF 43-1. In any event, the plans are largely identical, at least for the terms material to the present dispute. Both plans provide that an eligible employee would receive 100% of wages for the first sixty-three days and receive 60% of wages for days sixty-four through nine months. Dillon Decl., Ex. B at 3, Ex. C at 3, ECF 43-1. Both plans provide that participants "are entitled to certain rights and protections under [ERISA]" and then specify what those rights and protections include, such as the right to "file suit in a state or Federal court." Dillon Decl., Ex. B at 14, Ex. C at 14, ECF 43-1. And both plans state that the "plan of benefits is self-insured by the Employer and its cost is financed by the Employer." Dillon Decl., Ex. B at 16, Ex. C. at 16, ECF 43-1.

Plaintiff's short-term disability continued until November 27, 2019. Admin. Rec., ECF 25-1 at 912 (filed under seal). Plaintiff appealed the decision to deny further benefits, and the decision was upheld on March 26, 2020. *Id.* at 159. Plaintiff further appealed, and the denial was again affirmed on December 21, 2020. *Id.* at 647. The letter affirming the final decision informed plaintiff that he had "exhausted all administrative levels of appeals" and that he had "the right to bring a legal action for benefits under [ERISA] section 502(a)[.]" *Id.* at 649.

Plaintiff filed suit in this court, alleging a single claim under ERISA on grounds that Jaguar and LINA had wrongfully denied his claim for short-term disability benefits. Amd.

Compl. ¶¶ 1.1, 6.9, 6.10, ECF 6. Through the suit, plaintiff seeks to recover from Jaguar and LINA "all unpaid [short-term disability] benefits" under Jaguar's short-term disability plan. *Id.* at 6. Jaguar answered the complaint and asserted cross-claims against LINA for indemnity and breach of contract. Def. Jaguar Answer & Cross-Cl. ¶¶ 8.15-8.19, ECF 7. LINA also asserted a cross-claim against Jaguar for indemnity. Def. LINA Answer & Cross-Cl. ¶¶ 10-16, ECF 11. Plaintiff then filed a motion for trial on the administrative record under Fed. R. Civ. Pro. 52. ECF 22 at 1. LINA responded and separately moved to dismiss plaintiff's claims and defendant Jaguar's cross-claims. ECF 39 at 1-2. Jaguar responded to plaintiff's motion and simultaneously cross-moved for summary judgment on plaintiff's claims and on Jaguar's cross-claims against LINA. ECF 41 at 5.

## III. Discussion

Jaguar moves for summary judgment asserting that, among other things, this court lacks subject matter jurisdiction over plaintiff's claim because Jaguar's short-term disability plan is exempted from ERISA under the "payroll practices" exception, as described in regulations issued by the Department of Labor. Def. Jaguar Cross-Motion Summ. J. 1, ECF 41; 29 C.F.R. § 2510.3-1(b).

Federal courts have limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Because of this limitation, courts presume that causes of action are outside of their limited jurisdiction, and the burden of establishing jurisdiction is on the party asserting it. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (citing *Kokkonen v. Gaurdian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Generally, subject matter jurisdiction must be based on complete diversity between the parties, *see* 28 U.S.C. § 1332, or the presence of a federal question. *See* 28 U.S.C. § 1331. Federal question jurisdiction only arises where the

"well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27-28 (1983). A lack of subject matter jurisdiction can be raised at any time before judgment is entered, and courts have an independent duty to evaluate subject matter jurisdiction. *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004)

As for diversity jurisdiction, plaintiff did not allege complete diversity of citizenship between the parties as a possible ground for jurisdiction, and there is insufficient evidence in the record to determine all parties' citizenship. *See* Amd. Compl. ¶¶ 2.1; 4.1, ECF 6; Corp. Disclosure Statements, ECF 8 & ECF 12. Further, plaintiff has not pleaded any amount of damages, and therefore the court cannot determine whether the "amount in controversy" is sufficient to exercise diversity jurisdiction. *See* 28 U.S.C. § 1331 (requiring that the amount in controversy in a diversity case exceed $75,000). Based on the record before the court, diversity jurisdiction does not exist.

That leaves federal question jurisdiction. Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan[.]" If, however, the plan under which plaintiff brings a claim is not subject to ERISA regulation, then the resolution of the claim does not present a federal question and there is no subject matter jurisdiction. *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994); *see also Villegas v. The Pep Boys Manny Moe & Jack of Cal.,* 551 F. Supp. 2d 982, 992-93 (C.D. Cal. 2008) (remanding case to state court for lack of subject matter jurisdiction after determining employer vacation fund was not an ERISA plan).

ERISA regulates "employee welfare benefit plans," which is defined as including "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accidence, disability, death or unemployment[.]" 29 U.S.C. § 1002(1). Not all plans that satisfy this broad statutory definition are, however, subject to ERISA. Regulations from the Department of Labor exclude certain "payroll practices" from the definition of "employee welfare benefit plans" under ERISA:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include . . . payment of an employee's normal compensation, out of the employer's general assets, on account of period of time during which the employee is physically or mentally unable to perform his or her duties[.]

29 C.F.R. 2510.3-1(b)(2). Whether Jaguar's plan is subject to the "payroll practice" exemption thus depends on two elements: (1) whether the plan is considered "normal compensation," as that term is understood under the relevant regulations; and (2) whether the plan's benefits are paid out of the Jaguar's "general assets."

Plaintiff argues that the short-term disability plan is not a payroll practice because it pays only 60% of plaintiff's wages, and thus cannot be considered "normal compensation." Pl. Combine Reply and Resp. 7-8, ECF 45. Further, plaintiff asserts that the plan should be deemed an ERISA plan because Jaguar's documentation of its benefits package, including the short-term disability plan, describes the plan as an ERISA plan and notifies employees that they have certain rights under ERISA regarding the plan's benefits and administration. *Id.* at 8-9. Defendant LINA does not address Jaguar's arguments regarding subject matter jurisdiction.

The undisputed evidence in the record shows that both elements are met. Jaguar's short-term disability benefits are "normal compensation" because they are based on plaintiff's salary or wages and are paid out using Jaguar's existing payroll scheme. And the plan's benefits are

paid solely by Jaguar out of its general assets; there is no evidence that funds from any other source are used in paying out the short-term disability benefits to Jaguar employees. Thus, notwithstanding the labels Jaguar used to describe it, Jaguar's short-term disability plan is a "payroll practice" and not subject to ERISA.

**A. The Jaguar short-term disability plan is "normal compensation."**

"Normal compensation" under the DOL regulations is interpreted broadly to include payments that "closely resemble salary" or wages. *Bassiri v. Xerox Corp.*, 463 F.3d 927, 932 (9th Cir. 2006). Typically, courts have evaluated whether the benefit payments were made using the same or similar system as the company's payroll, and if the benefit payment amounts were "tied to the employee's salary and not to the variable performance of a fund." *Id.*; *see also Clay v. AT & T Commc'ns of California, Inc.*, No. 2:12-CV-2027 JAM KJN, 2012 WL 4209123, at *3 (E.D. Cal. Sept. 18, 2012).

Another factor to consider is whether the benefit payments ended upon the employee's termination. *Bassiri*, 463 F.3d at 932 (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985)). That fact is not necessarily dispositive as several cases have held that benefit payments that could continue after termination were still "normal compensation" because of the manner in which benefits were paid and how initial eligibility for the benefits was determined. *See, e.g.*, *Logan v. Lincoln Nat'l Life Ins. Co.*, No. SA-20-CV-01174-XR, 2021 WL 2669564, at *7 (W.D. Tex. Feb. 25, 2021) ("Here, the [short-term disability] benefits were available only to employees who qualified, and benefits were contemplated to be paid to employees who missed work due to temporary illness or disability. That the payments could perhaps continue in some cases for the duration of the 26-week period even after a recipient was no longer employed does not automatically convert the benefit into one covered by ERISA.").

Numerous cases have held, contrary to plaintiff's primary contention, that short-term disability plans paying out less than the employee's full wages or salary can still be considered "normal compensation" as that term is understood under DOL's regulations. *See, e.g.*, *Bassiri*, 463 F.3d at 933 (finding that employer's limited term disability plan that paid out 60% of the employee's wages provided "normal compensation" because benefits were administered via payroll, and were tied to employee's salary, not performance of an external fund); *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 726 (D.C. Cir. 2016) (same); *Bilheimer v. Fed. Exp. Corp.*, No. 08-80420-CIV, 2009 WL 1324202, at *1 (S.D. Fla. May 13, 2009) (finding that short-term disability plan that paid out 70% of employee's wages was "normal compensation").

Here, the benefits paid under Jaguar's short-term disability plan have the hallmarks of "normal compensation." The benefit amount is based on the employee's wages or salary for work performed just prior to the date of disability; employees receive 100% of their salary for the first sixty-three days of eligibility, and 60% of their wages from day sixty-four up to nine months. Dillon Decl., Ex. B at 3, Ex. C at 3, ECF 43-1. Plaintiff received his full pay and benefits from the duration of his leave, and the payments were "made directly by [Jaguar] as part of its payroll administration," and were "funded as part of [Jaguar's] regular payroll," not by "a separate trust or insurance." Dillon Decl. ¶¶ 5-6, ECF 43. The benefits under the plan end if the employee is no longer employed by Jaguar, though there are some narrow circumstances in which the benefits could continue after termination for a time. Dillon Decl. Ex. B at 5; Ex. C at 5, ECF 43-1.

Neither plaintiff nor defendant LINA offer any contrary evidence. Therefore, Jaguar's short-term disability provides "normal compensation" under 29 C.F.R § 2510.3-1 because the payments closely resemble normal wages or salary.

**B. The undisputed evidence demonstrates that the benefits under Jaguar's short-term disability plan are paid out of Jaguar's general assets.**

More importantly, perhaps, is the second element: the source of the funds for any "payroll practice" must be the employer itself and not a trust or other external source where funds are "maintained in a manner to designed to protect employee" benefits. *Alaska Airlines, Inc. v. Oregon Bureau of Lab.*, 122 F.3d 812, 814 (9th Cir. 1997); *see also Clay*, 2012 WL 4209123, at *4 (noting the importance of the "source of payment" element). The "critical inquiry is not whether the payment of short-term disability benefit is made under the auspices of a benefit plan; rather, the salient inquiry here is *the source* from which the benefits are actually paid." *Behjou v. Bank of Am. Grp. Benefits Program*, No. C 10-03982 SBA, 2012 WL 1534931, at *3 (N.D. Cal. May 1, 2012) (emphasis in original).

This analysis is based on Congress's intent in passing ERISA to combat the "mismanagement of funds accumulated to finance employee benefits and the failure to pay employee benefits from accumulated funds." *Bassiri*, 463 F.3d at 927; *see also id.* at 932–33 (explaining that Congress intended that ERISA cover "true disability plans," namely, those "that have traditionally been regarded as employee benefit plans, rather than a continuation of wages or salary.") (quoting 40 Fed. Reg. 34526 (Aug. 15, 1975)). Benefit plans that are paid out of the employer's assets do not present the types of "risks that ERISA is intended to address." *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). Rather, these employer-paid benefits are similar to wages in that both depend on the financial health of the employer and not on an external trust or other fund. *See id.* And the "danger of defeated expectations" in employer-paid

benefits or wages because an employer can no longer meet those particular financial obligations is "a danger Congress chose not to regulate in ERISA." *Id.*; *see also Alaska Airlines,* 122 F.3d at 814 (holding that an employer's self-funded sick leave program was not subject to ERISA regulation because benefit payouts depended solely on the employer's financial health); *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir. 1998) ("Where an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits.").

Here, the evidence regarding how Jaguar's short-term disability plan is funded is not particularly robust; there are no financial statements, paystubs, or other documentary evidence showing the flow of funds from Jaguar's "general assets" to plaintiff. There is, however, a declaration from Maryanne Dillon, Jaguar's Rewards Manager. In that role, Dillon is familiar with the terms of Jaguar's short-term disability plan, and in particular, how the employee payroll and benefit plans are administered. Dillon Decl. ¶¶ 4-5, ECF 43. According to Dillon, the "[p]ayment of any [short-term disability] benefits are made directly by [Jaguar] as part of its payroll administration," and specifically, plaintiff's short-term disability benefits were "funded as part of [Jaguar's] regular payroll." *Id*. at ¶¶ 5-6. Jaguar's short-term disability benefits are "not funded or paid out of a separate trust or insurance" as "[n]o separate trust or insurance existed/exists for the funding and/or payment for the [short-term disability] benefits at issue here." *Id.* at ¶ 6. Neither LINA nor plaintiff have provided any evidence contradicting or otherwise disputing Dillon's description of the plan's administration or benefit payout scheme.

Additionally, the agreement between Jaguar and LINA provides that Jaguar "sponsors a self-funded disability plan for its eligible employees or has adopted a program of salary continuance for employees temporarily unable to work due to accident or sickness [or]

disability[.]" Dillon Decl., Ex. A at 1 (Recitals), ECF 43-1. The agreement contemplates that some of the Jaguar benefit plans to be administered by LINA may not be subject to ERISA under the "payroll practices" exemption. *Id.* at ¶ 6.4. Further, the agreement states that Jaguar shall be solely responsible for "[a]ll Plan Benefits, expenses and taxes." *Id.* at ¶ 7.3. The short-term disability plan documentation that Jaguar provides to employees states that the plan "is self-insured by [Jaguar] and its cost is financed by [Jaguar]." Dillon Decl., Ex. B at 16, Ex. C at 16, ECF 43-1. Again, neither LINA nor plaintiff have provided any evidence disputing or contradicting the terms in these contracts that suggest short-term disability benefits are self-funded by Jaguar.

Based on that uncontroverted evidence, the court finds that Jaguar's short-term benefit program is paid out of Jaguar's general assets, and not out of a separate trust account held for the employee's benefit. Therefore, the plan satisfies this second element of the "payroll practice" exemption.

**C. Plan documents describing the short-term disability plan as subject to ERISA are not dispositive.**

Finally, while it is true that, as plaintiff asserts, the plan documents repeatedly refer to the short-term disability plan as being governed by ERISA and provide employees with many, if not all, of the procedural and other reporting protections provided by ERISA, that is not dispositive in determining whether the plan is subject to ERISA.

First, the Ninth Circuit has not directly addressed whether an employer's characterization of a plan is a relevant factor to consider when determining whether the "payroll practices" exception applies. *See Alaska Airlines*, 122 F.3d at 814 (evaluating the regulation's stated "normal compensation" and source of funds elements); *but cf. Harper v. Am. Chambers Life Ins. Co.*, 898 F.2d 1432, 1433 (9th Cir. 1990) ("The existence of an ERISA plan is a question of fact,

to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.") (quoting *Kanne v. Connecticut Gen. Life Ins.*, 867 F.2d 489, 492 (9th Cir. 1988)).

In any event, the labels that parties use—whether terming their cause of action a "tort" or a "breach of contract" or, as in this case, designating a benefit plan as an ERISA one—do not control the court's evaluation of the document's legal effect. This would "elevate substance over form" and allow parties to evade or evoke ERISA whenever it might suit their needs. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) ("But, distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their contract claims as claims for tortious breach of contract.") (internal quotation marks omitted). This concern is especially acute when it bears on the court's jurisdictional power. *See Freeman Holdings of Arizona, L.L.C. v. Does, 1-50*, No. CV-11-01877-PHX-NVW, 2013 WL 210810, at *4 (D. Ariz. Jan. 18, 2013) ("A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power.") (quoting Charles A. Wright et al., *Federal Practice and Procedure* § 3522 (3d ed. 2009)).

Several courts have recognized the danger of giving too much weight to an employer's designation of a plan as an ERISA plan when it may not legally qualify as one. *E.g.*, *Stern v. Int'l Bus. Machines Corp.*, 326 F.3d 1367, 1374 (11th Cir. 2003). By labeling a particular benefit an "ERISA plan," an employer could, for example "convert an otherwise exempt benefit into one covered under ERISA" and "avoid state tort liability" via ERISA-preemption. *Langley v.*

*DaimlerChrysler Corp.*, 502 F.3d 475, 481 (6th Cir. 2007) (deriding such a tactic as "regulation shopping").

When the employer's designation has been a relevant factor to the analysis, it is rarely, if ever, the case that a plan which otherwise met the requirements of a "payroll practice" was deemed to fall outside of the exception based on the employer's designation alone. *See Stern*, 326 F.3d at 1374 (noting that employer designation was a factor, but the "mere labeling of the plan should not determine whether ERISA applies."); *Langley*, 502 F.3d at 481. For example, where an employer's short-term disability plan was in part funded by assets other than the employer's general assets, and the employer not only represented to employees that the plan was covered by ERISA, but it also filed paperwork with the Department of Labor and the IRS "consistent with the plan's ERISA status," the plan did not satisfy the "payroll practice" exception. *McMahon*, 162 F.3d at 38.

Here, Jaguar's designation that the short-term disability plan is governed by ERISA does not outweigh the other factors demonstrating that the "payroll practice" exception applies. *See Marshall v. Whirlpool Corp.*, No. 07-CV-534-JHP, 2009 WL 1939922, at *5 (N.D. Okla. July 6, 2009) (declining to subject a plan that otherwise satisfied the "payroll practice" exception based on the plan's labeling alone: "[T]he use of typical ERISA language by the booklet . . . , without more, is insufficient to transfer an otherwise exempt benefit plan into an ERISA governed plan."). The undisputed evidence shows that Jaguar pays the benefits out of its own assets, and that the benefit payments are tied to the employee's wages and are paid using the same payroll scheme Jaguar uses to pay its employees' wages. Taken together, those facts outweigh the employer's designation of the plan as an ERISA one, and therefore, Jaguar's short-term disability plan is a "payroll practice" not subject to ERISA.

**D. Remaining Motions and Cross-Claims**

Plaintiff's sole claim and basis for federal jurisdiction alleged in the complaint is made under ERISA. ECF 6 ¶¶ 1.1; 4.1 6.10. Because Jaguar's short-term disability plan falls outside of ERISA's regulations, the court does not have subject matter over the claim alleged in the complaint and thus plaintiff's complaint must be dismissed without prejudice. *Delaye*, 39 F.3d at 238. That also renders plaintiff's outstanding motion for trial under Fed. R. Civ. Pro. 52 (ECF 22) moot.

Jaguar asserted cross-claims against LINA for indemnity and breach of contract. Def. Jaguar's Answer & Cross-Cl., ECF 7 ¶¶ 8.15-8.19. LINA also filed a cross-claim against Jaguar for indemnity. Def. LINA's Answer & Cross-Cl., ECF 11 ¶¶ 10-16. Although neither of the defendants allege as much, the jurisdictional basis for both LINA's and Jaguar's cross-claims are Jaguar's short-term disability plan and the administrative services agreement between Jaguar and LINA. Neither of the defendants have provided any basis for preserving the cross-claims.

The lack of subject matter jurisdiction over plaintiff's claim also results in dismissal of those cross-claims. As explained, the short-term disability plan is not covered ERISA, and thus the court does not have subject matter jurisdiction over disputes arising from the plan. There is no diversity jurisdiction alleged that could independently support jurisdiction over the dispute between Jaguar and LINA regarding the administrative services agreement. And finally, to extent that any supplemental jurisdiction under 28 U.S.C. 1367(a) could offer any jurisdictional hook, no party offers any reason why this is case is anything other than a "usual" one, and none of the relevant factors support keeping jurisdiction over the cross-claims here. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.”).

## RECOMMENDATIONS

Defendant Jaguar’s cross-motion to dismiss for lack of subject matter jurisdiction (ECF 41) should be granted, and plaintiff’s complaint should be dismissed without prejudice. Defendant Jaguar and defendant LINA’s crossclaims should be dismissed without prejudice for lack of subject matter jurisdiction and because the court should decline to exercise any supplemental jurisdiction under 28 U.S.C. §§ 1367(a) and (c). Finally, plaintiff’s motion for trial on the administrative record under Federal Rule of Civil Procedure 52 (ECF 22), and defendant LINA’s motion to dismiss plaintiff’s claims and Jaguar’s cross-claims (ECF 39) should be denied as moot.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Wednesday, May 18, 2022. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

//

//

//

//

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED May 4, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge